**2014 BNH 010**         Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                                    Bk. No. 13-12452-BAH
                                                                                          Chapter 13
James S. Fournier and
Tina M. Fournier,
                Debtors


*Robert R. Thomas, Esq.*
*Harvey, Kleger & Thomas*
*Methuen, Massachusetts*
*Attorney for Debtors*

*Shawn K. Doil, Esq.*
*Perkins Thompson, P.A.*
*Portland, Maine*
*Attorney for Creditor TD Bank, N.A.*


## MEMORANDUM OPINION

### I.  INTRODUCTION

Debtors James and Tina Fournier (the "Debtors") filed a motion pursuant to Local Bankruptcy Rule 3012-1 seeking to void the second mortgage lien on the Debtors' residence held by TD Bank, N.A. (the "Bank" or "TD Bank") (Doc. No. 18) (the "Motion").  In the Motion, the Debtors seek an order that (1) determines the secured status of the Bank's claim under 11 U.S.C. § 506(a); and (2) modifies the rights of TD Bank as the holder of a residential real property lien by voiding the lien as wholly unsecured in accordance with 11 U.S.C. § 1322(b)(2).  TD Bank objected to the Motion (Doc. No. 19) on the grounds that its claim is not wholly unsecured.  The Court held a hearing on the Motion on July 10, 2014, in order to take evidence on the issue of value.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§

1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The Debtors own real estate located at 4 Salem Road in Atkinson, New Hampshire (the "Property"), which is their principal residence.  The Property is a fifty-five year old, one-story ranch with a two-car garage underneath.  The Property has eight rooms, including four bedrooms and two bathrooms, and contains 1,644 square feet of living area.  The Property has a pellet stove and a built-in wall unit for air conditioning, which reportedly can cool the whole house.  The Property consists of .52 acres.  It is located on a corner lot, with the street in front of the home being a busier road (with a "double yellow line") and the street on the side of the home, on which driveway is situated, being a quieter street that is part of a neighborhood.  Both appraisers testified that the Property is well maintained, with no deferred maintenance issues, except that the Debtors' Expert (as identified below) testified that railings needed to be installed on the front door steps.

The Property is subject to a first mortgage obtained in September 2006.  The Property is also subject to a second mortgage obtained in January 2007.  The second mortgage is held by TD Bank. The Debtors sought relief under chapter 13 of the Bankruptcy Code on October 4, 2013 (the "Petition Date").  At the time of the Debtors' bankruptcy filing, $225,422.94 was owed on the first mortgage and $24,818.41 was owed on TD Bank's second mortgage.  The parties disagree as to the value of the Property.  The Debtors contend the Property was worth $220,000.00 as of January 23, 2014, the date of an appraisal performed by Michael V. Correia ("Correia" or the "Debtors' Expert").  TD Bank contends the property was worth $254,000.00 as

of February 25, 2014, the date of an appraisal performed by Mark C. Lester ("Lester" or the "Bank's Expert"). The Property is tax assessed at $242,000.00.

## III. DISCUSSION

The Debtors seek a finding that TD Bank's mortgage is wholly unsecured so that they may void its lien. See Domestic Bank v. Mann (In re Mann), 249 B.R. 831 (B.A.P. 1st Cir. 2000) (holding that, notwithstanding the anti-modification provision contained in § 1322(b)(2), debtors may void residential real property liens that are wholly unsecured as determined by a valuation under § 506(a)). TD Bank seeks a finding that the Property is worth more than $225,422.94. If the Debtors' residence is worth more than this amount, then some value exists to support TD Bank's claim, making it a claim that is in fact both secured and secured only by a security interest in the Debtors' principal residence, thereby implicating the anti-modification provision of § 1322(b)(2).[1]

In the Court's view, chapter 13 debtors have the burden to prove that they are entitled to strip a lien from the debtor's principal residence. Johnston v. Suntrust Bank (In re Johnston), Bk. No. 12-51263, Adv. No. 12-05066, 2013 WL 1844751, at *5 (Bankr. W.D. Va. Apr. 12, 2013) (concluding that the burden should be placed on the debtor in this context given the economic motivations of the parties and the legal principle that parties seeking relief or seeking to change the status quo bear the burden of proving that they are entitled to such relief); Young v. Camelot Homes, Inc. (In re Young), 399 B.R. 480, 486 (Bankr. D. Me. 2008) (stating that chapter 13 debtors bore the burden of proving the value of the judgment creditor's collateral, where the debtors sought to confirm a plan that crammed down the creditor's claim); but see In re Heritage

---

[1] Section 1322(b)(2) provides in relevant part that debtors, through a plan, may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2).

3

Highgate, Inc., 679 F.3d 132, 139-40 (3d Cir. 2012) (noting that a three-way split of authority exists in allocating the burden of proof as to the value of secured claims under § 506(a), with some courts placing the burden on the debtor, some placing the burden on the creditor, and some shifting the burden by placing the initial burden on the debtor and the ultimate burden of persuasion on the creditor, and concluding that the burden shifting paradigm should apply); In re Bethoney, 384 B.R. 24, 31 (Bankr. D. Mass. 2008) (stating that the debtor bears the initial burden of proof in a motion under § 506(a) seeking to bifurcate a secured creditor's claim secured by the debtor's vehicle).

    Here, each party presented appraisal evidence through the testimony and report of a licensed appraiser. The appraisers both used the same method for valuing the Property, the sales comparison approach.[2] Both appraisers testified competently and had equivalent qualifications, with each appraiser having significant experience in appraising residential real estate, as well as knowledge of the market and the Property.

    While the Debtors' Expert valued the Property at $220,000.00, the Bank's Expert valued the Property at $254,000.00. Given that the value of the Property must be $225,422.94 or less, in order for the Court to find in favor of the Debtors on the issue of value, the Court would essentially need to completely disbelieve the testimony of the Bank's Expert. In addition, the Court would need to find that the margin of error in the Debtors' Expert's appraisal is less than 2.5%. The Court is unprepared to make such findings on this record. See Fraize v. Beneficial Mortg. Corp. of NH (In re Fraize), 208 B.R. 311, 313 (Bankr. D.N.H. 1997) (noting that "valuation" is "less than an exact science"). Further, a detailed review and analysis of the

---

[2] "Valuation through the comparable sales approach assumes that the properties valued by the market are comparable enough to the subject property that the adjustments by the appraiser are relatively small and that the value is primarily determined by the market, not the appraiser." In re Ferman, 2001 BNH 028, 3.

4

appraisers' reports and testimony supports the Court's conclusion that the Debtors' Property is worth more than $225,422.94.

### A. Debtors' Evidence of Value

The Debtors' Expert testified that the value of the Property was $220,000.00 as of January 23, 2014,[3] based on a comparable sales analysis. Correia used four comparable sales to arrive at this value. In choosing his comparable sales, Correia testified that location was the primary factor.[4] Of the four comparable sales, two were located within a mile of the Property (Comparable Sale 2 was .36 miles from the Property and Comparable Sale 4 was .62 miles from the Property) while two were located more than a mile away (Comparable Sale 1 was 1.74 miles from the Property and Comparable Sale 3 was 2.41 miles from the Property). Comparable Sale 1 was located at 39 Main Street and was one of the more recent sales, having closed on October 18, 2013 (two weeks after the Petition Date). Comparable Sale 2 was located at 23 Sunset Drive; the property had only 1,144 square feet of living area, compared to the Property's 1,644 square feet, and was located in a neighborhood setting, unlike the Property. Comparable Sale 3 was located at 33 Island Pond Road and was the oldest sale, having closed back in February of 2013. Comparable Sale 4 was located at 6 Meadow Lane. Like Comparable Sale 2, this property was considerably smaller than the Property, having only 1,184 square feet of living area, and also was located in a neighborhood setting. Per Correia's report, the adjusted sales prices for these sales were as follows:

                Comparable Sale 1        $217,400.00
                Comparable Sale 2        $221,500.00

---

[3] While Lester's report is dated January 23, 2014, he noted in his appraisal report that "I have performed an appraisal of the subject property with an effective date of 10/28/13 and 11/03/13," both dates being within a month of the Petition Date.

[4] All of the comparable sales used by both the Debtors' Expert and the Bank's Expert were of properties located in Atkinson, New Hampshire, the same town in which the Property is located.

                Comparable Sale 3        $220,400.00
                Comparable Sale 4        $220,000.00

       The Debtors' Expert made various adjustments to his comparable sales, based on their smaller living areas, finished basements, energy efficient items, and smaller garages. The Bank's Expert did not challenge these individual adjustments. Accordingly, the Court sees no basis upon which to question them. Correia made no adjustments for the difference in age between the Property and the comparable sales, which appears reasonable, as the difference in age was no more than ten years for any property.

       Lester did challenge the comparable sales used by the Debtors' Expert on other grounds. He disagreed with several of Correia's view adjustments, arguing instead that he should have made location adjustments or no adjustments at all. In addition, Lester noted that Comparable Sale 1 was marketed in a vacant state, which he indicated would tend to depress the selling price. Further, he testified that Comparable Sale 4 was sold by a couple who had just moved the home's former occupant (a family member) into an assisted living facility and did not want to carry the home through the winter. The Bank's Expert testified that the selling broker had informed him that Comparable Sale 4 sold for less than it was worth.

    **B.  TD Bank's Evidence of Value**

  The Bank's Expert testified that the value of the Property was $254,000.00 as of February 25, 2014,[5] based on a comparable sales analysis. Lester used three comparable sales to arrive at this value. Comparable Sale 1 was located at 65 Walker Street, which, at a distance of 0.65 miles is the closest to the Property of his three comparable sales. Its lot size of 1.68 acres was considerably larger than the Property's lot size of .52 acres. Comparable Sale 2 was located at 29 Maple Avenue, which is 1.66 miles from the Property. The gross living area of this property

---

[5] Correia did not testify that the value the Petition Date would have been any different.

was only 1,044 square feet, or approximately 37% smaller that the Property.  Comparable Sale 3 was located at 3 Hovey Meadow Road, one mile from the Property.  Like the Property, Comparable Sale 3 was a ranch-style home, with square footage of 1,488, which is closer in size to that of the Property.

The adjusted sales prices for the comparable sales used by the Bank's Expert are as follows:

|  |  |
|---|---|
| Comparable Sale 1 | $254,000.00 |
| Comparable Sale 2 | $269,000.00 |
| Comparable Sale 3 | $250,545.00 |

Like the Debtors' Expert, the Bank's Expert made various adjustments to his comparable sales, based on their smaller living area, finished basements, energy efficient items, and smaller garages.  The Debtors' Expert did not challenge these individual adjustments.  For that reason, the Court sees no basis upon which to question them.

Unlike the Debtors' Expert, the Bank's Expert made no adjustment for the differences in lot size (Comparable Sale 1 had 1.68 acres, Comparable Sale 2 had 1.75 acres, and Comparable Sale 3 had 1.15 acres).  He testified that greater lot size does not always translate into higher value because what matters is how much of a lot is usable, i.e., "lot utility."  For example, Lester testified that while Comparable Sale 3 was on a larger lot than the Property, its terrain was more rolling, provided no additional overall privacy to the homeowner, and had limited utility.  He explained that when extra land is in the back of a property and consists of woods, the extra land does not create more value.  The Debtors' Expert did not discredit that point of view.

Although the difference in age between the Property (fifty-five years old) and Lester's Comparable Sale 1 (forty-one years old) and Comparable Sale 3 (thirty-six years old) was significant, fourteen years and nineteen years respectively, Lester made no age adjustments.  He testified that no such adjustments were necessary because the properties were of the same

7

"effective" age and condition as the Property.  He noted that the Property was in good condition; a conclusion which is supported by the photographs of the Property that were submitted with the appraisal reports.  Lester testified further that the Property contains an addition, suggesting that the entire property is not fifty-five years old, but only the original home.

### C. Court's Conclusion as to Value

In the Court's view, Debtors' Comparable Sale 1 is the most similar to the Property—despite its distance of 1.74 miles from the Property—and provides the Court with the Debtors' best indicator of value, based on its lot size, the amount of living space, and its amenities, e.g., garage size and location, patio/deck, and fireplace.  Comparable Sale 1 sits on a .57 acre lot compared to the Debtors' .52 acre lot.  Comparable Sale 1 has 1,568 square feet of living space compared to the Property's 1,644 of living space.  And, like the Property, Comparable Sale 1 has a two car garage underneath, a comparable deck/patio, and a fireplace.

In the Court's view, TD Bank's Comparable Sale 3 is the most similar to the Property and provides the Court with TD Bank's best indicator of value, based on its proximity to the Property, the amount of living space, and its amenities, e.g., garage size and fireplace.  Comparable Sale 3 was located within one mile of the Property, had 1,488 square feet of living space compared to the Property's 1,644 of living space, and, like the Property, contained a two car garage underneath and a fireplace.

While Correia's Comparable Sale 1 and Lester's Comparable Sale 3 are the most reasonably similar to the Property, the Court believes that one further adjustment to the value of those properties is necessary, as the Court believes that similar adjustments should be made when adjusting for differences in reported square footage.  While the appraisers made similar adjustments for finished space in the basements of the comparable sales, they used different per square foot multipliers when adjusting the main floor living space.  Lester testified that he used

8

$35.00 per square foot to adjust for the 156 square foot difference between the Property and Comparable Sale 3. Correia used $25.00 per square foot to adjust for the 76 square foot difference between the Property and Comparable Sale 1. Using an average of $30 per square foot to adjust for these differences, the living space adjustment for Lester's Comparable Sale 3 would be $4,680.00, instead of $5,500.00, and the living space adjustment for Correia's Comparable Sale 1 would be $2,280.00, instead of $1,980.00. Based on these adjustments, the Court arrives at the following adjusted sales price for each of the comparable sales:

Debtors' Comparable Sale 1 (39 Main Street)

| | |
|---|---|
| Sale price (10/18/2013): | $210,000.00 |
| View (traffic/busy street): | +$10,500.00 |
| Gross living area: | +$2,280.00 |
| Basement/finished: | -$2,500.00 |
| Energy eff. items: | -$2,500.00 |
| Adjusted Sale Price: | $217,780.00 |

TD Bank's Comparable Sale 3 (3 Hovey Meadow Rd.)

| | |
|---|---|
| Sale price (6/28/2013): | $264,045.00 |
| Better location: | -$15,000.00 |
| Gross living area: | +$4,680.00 |
| Lot size (1.15 acres): | None[6] |
| Basement/finished: | -$5,000.00 |
| Energy eff. items: | +$1,000.00 |
| Adjusted Sale Price: | $249,725.00 |

As the Court noted earlier, both experts testified competently and credibly, neither one providing successful challenges to the assumptions and analysis of the other. Accordingly, the Court gives equal weight to the values of their comparable sales, as further adjusted by the Court. Thus, taking an average of $217,780.00, the adjusted sales price for Correia's Comparable 1, and

---

[6] Even if the Court were to make an adjustment for lot size (like the Debtors' Expert did for the one comparable sale that was significantly larger than the Property), that adjustment of -$5,212.00 (-.63 acres x $8,270.00) would not affect the outcome in this case. The adjusted sales price would be $244,513.00, which, when averaged with the adjusted value for the Debtors' Comparable Sale 1, would result in a value of $231,146.50. This is still more than $225,422.94.

9

$249,725.00, the adjusted sales price for Lester's Comparable 3, the Court finds that the value of the Property was at least $233,752.50 as of the Petition Date.[7]  Because this exceeds the amount owed on the first mortgage on the Petition Date, TD Bank's lien is secured in part by its mortgage on the Property.

**IV.  CONCLUSION**

The Court concludes that the Property is worth more than $225,422.94.  Accordingly, value exists to support TD Bank's claim.  For that reason, the Court will deny the Motion seeking to void the TD Bank's second mortgage lien on the Debtors' residence.  TD Bank's claim shall be treated as secured in accordance with 11 U.S.C. § 506(a).  The Debtors may not modify the rights of TD Bank under 11 U.S.C. § 1322(b)(2).  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   September 8, 2014            /s/ Bruce A. Harwood
                                     Bruce A. Harwood
                                     Chief Bankruptcy Judge

---

[7] While not making any adjustment based on the vacant state of Debtors' Comparable Sale 1, the Court does give credence to Lester's contention that a property's vacant state can depress its selling price. Accordingly, the Court could find that the adjusted sales price for Debtors' Comparable Sale 1 should be even higher, resulting in an even higher valuation.